PHŒNIX INSURANCE COMPANY OF HARTFORD v. H. C. McEVONY ET AL.

FILED NOVEMBER 4, 1897.  No. 7532.

1. **Sheriffs' Fees: MILEAGE.** The statute limits the mileage of a sheriff to five cents per mile for each mile actually and necessarily traveled in making a levy upon and appraisal of real estate.

2. ———: **COST OF PRINTING NOTICE OF SALE.** A sheriff may not legally charge as costs for printing a notice of sale of real estate any greater sum than he actually paid the printer therefor.

3. **Judicial Sales: FEES OF APPRAISERS.** Freeholders summoned by a sheriff to appraise real estate levied on are entitled to only 50 cents each per day for each day they are employed in such duty.

4. ———; ———. Such appraisers are not entitled to mileage.

5. Sheriffs' Fees: APPRAISAL. The sheriff is not entitled to the fees of an appraiser for assisting in appraising real estate levied upon.

6. Sheriffs: ILLEGAL FEES: PENALTY: JOINDER OF CAUSES OF ACTIONS: ELECTION. In an action against a sheriff and the sureties on his bond to recover illegal fees charged and collected by him, the plaintiff may join in his petition a cause of action to recover the penalty provided by statutes for the charging and taking of illegal fees by an officer.

7. ———: ———: CONTRACTS: PUBLIC POLICY. The statute prescribes and limits the fees and compensation which a sheriff may charge and receive for any services performed by him by virtue of his office; and he cannot make a valid agreement with a litigant for any compensation beyond that prescribed by statute for the performance of an official duty.

ERROR from the district court of Holt county. Tried below before KINKAID, J. *Reversed.*

*Wright & Stout,* for plaintiff in error.

*H. M. Uttley* and *R. R. Dickson, contra.*

RAGAN, C.

The Phœnix Insurance Company of Hartford, Connecticut,—hereinafter called the "insurance company,"—brought in the district court of Holt county against H. C. McEvony, the sheriff thereof, and the sureties on his official bond, ten actions at law to recover certain fees which the insurance company alleged the sheriff had charged and taken from it for services performed by him as sheriff, in certain proceedings brought in the district court of said county by said insurance company to foreclose certain real estate mortgages, which said fees were in excess of those which the statute permitted the sheriff to charge and take for the services rendered. The petition in each of the cases claimed also the $50 penalty provided by section 34, chapter 28, Compiled Statutes, for the charging and taking of illegal fees. The cases in the district court were numbered 4128 to 4137, both inclusive. On the motion of the sheriff these ten suits were consolidated and tried as one. The jury found a verdict for the

defendants in the court below, upon which a judgment of dismissal of the insurance company's action was rendered and it prosecutes here a petition in error.

1. The ten cases are substantially alike and the conclusion reached here is applicable to each of said cases. The case considered here is based upon the alleged illegal charges made by the sheriff in the case of the insurance company against Cullen,—a case brought to foreclose an ordinary real estate mortgage. A decree having been obtained, an order of sale was issued and delivered to the sheriff. He caused the property to be appraised, levied upon, advertised the same and offered it for sale, but it was not sold for want of bidders. We assume, without deciding, that the evidence sustains the finding of the jury that the sheriff actually traveled 98 miles in levying upon and appraising the land sought to be sold in the foreclosure case of the insurance company against Cullen. We also assume, without deciding, that the evidence sustains the finding of the jury that the printer actually charged the sheriff $9 for publishing the notice of sale of the land in the Cullen case, and that such charge did not exceed the lawful rate for such services. We then inquire what services did the sheriff perform in the Cullen case? what were his legal fees therefor? and what did he actually charge and take for such services? The result is as follows:

Traveled 98 miles to make levy and app.—
    Legal fees for same, 5c for each mile....$4 90
    Illegal fees taken, none.
Calling inquest, appraisers—
    Legal fees therefor, 50c.
    Charge therefor ......................    50
    Illegal fees taken, none.
Fees of two appraisers—
    Legal fees therefor, 50c each, $1.
    Charge therefor ...................... 3 00
    Illegal fees collected .................     $2 00

Levy and return of execution—
  Legal fees for same, $1.
  Charge therefor ......................$2 00
  Illegal fees collected .................                    $1 00
Three certificates incumbrances—
  Legal fees therefor, $2 each.
  Charge therefor ...................... 6 75
  Illegal fees collected...................                    75
Advertising sale in newspaper—
  Legal fees therefor, 50c.
  Charge therefor, nothing.
  Illegal fees taken, none.
Making copy of appraisal—
  Legal fees therefor, 25c.
  Charge therefor ...................... 50
  Illegal fees collected .................                     25
Publishing notice of sale in newspaper—
  Legal fees therefor, legal rate, $9.
  Charge therefor ...................... 9 00
  Illegal fees collected, none.

In other words, the sheriff charged and collected from the insurance company for the services rendered in the Cullen case, fees in excess of those allowed by law of $3.50. We have said above that we assume that the sheriff, in advertising and appraising this land, actually traveled 98 miles. We do not think, however, that he did. The record shows that this land was levied upon and appraised on December 10, 1892, on which date a number of other pieces of land were levied upon and appraised, the appraisers in each case being the same; and totalizing the mileage charged up in these cases, it aggregates 1,295 miles. It is very evident that the sheriff and the appraisers did not travel 1,295 miles on the 10th day of December. Again, it appears that from the 10th to the 16th of December inclusive, the mileage charged by the sheriff for levying upon and appraising lands amounted to more than 4,000 miles. Again, it is evident

that the sheriff and the appraisers in these six days did not travel that distance. This remarkable state of facts was probably brought about in this way: At the time the sheriff appraised and levied upon the lands in the Cullen case he had in his hands other orders of sale in other cases; and, if he went into the country and levied upon and appraised these lands upon actual view thereof, upon his return to his office he did not limit himself in his mileage to the actual number of miles traveled during his absence and apportion the mileage to the various cases in which he had made levies and appraisals, but charged mileage to each case, computing the distance from the county seat to the piece of land and return. The statute limits the mileage of the sheriff to five cents per mile for each mile actually and necessarily traveled in making a levy and appraisal. And if a piece of land is situate 50 miles from the county seat and the sheriff goes upon said land for the purpose of making a levy thereon and an appraisal thereof, and during the same trip he makes a levy upon and an appraisal of another piece of land, and necessarily and actually travels in making both said levies only 100 miles, he may not legally charge mileage in each case of 100 miles, but must apportion the mileage between the two cases. (*Burlington & M. R. R. Co. v. Beebe*, 14 Neb., 474.)

Section 17, chapter 28, Compiled Statutes, prescribes the legal fees which a printer may charge for publishing a notice of sale; but we know of no law which compels a printer to charge the full legal rate; and if the printer charges the sheriff less than the legal rate for printing a notice of sale then the sheriff may not legally charge as costs in the case any more than he actually paid the printer.

We do not know upon what theory the sheriff charged $3 for appraisers' fees since the statute (Code of Civil Procedure, sec. 512) limits the compensation of appraisers to the sum of 50 cents each for each day each appraiser may be engaged as such. These appraisers were only

engaged in appraising land in the Cullen case one day,. and the only fees that could be legally charged for their services was the sum of one dollar. The sheriff himself was not entitled to the fees of an appraiser for assisting in making the appraisal, though he was *ex officio* one of such appraisers, as the statute limits the compensation for appraising the lands to the two freeholders summoned by the sheriff. The statute does not provide for freeholders summoned to appraise land being paid any mileage whatever. Doubtless the legislature supposed that a sheriff, when he had levied upon lands, would summon freeholders who resided in the vicinity of such lands to make the appraisal, and for that reason failed to provide that such appraisers might be allowed mileage. Certainly it was never in the contemplation of the legislature that a sheriff would keep in his employ, so to speak, two men residing in a county seat for the purpose of making an appraisal of all the lands upon which he levied, as the record shows seems to have been the custom of this sheriff of Holt county.

We are unable to understand upon what theory the sheriff charged the insurance company $6.75 for three certificates of incumbrances existing against the land appraised, as section 491c of the Code of Civil Procedure, as it existed in 1892, fixed the charge which each officer might make for his certificate at two dollars. Section 5, chapter 28, Compiled Statutes, allows the sheriff a fee of one dollar for levying a writ of execution and returning the same, and he may not charge a fee of one dollar for making a levy and also a fee of one dollar for returning the execution as he did in the case under consideration. The sheriff was probably led into this last charge by section 10, chapter 28, Compiled Statutes, which fixes the fee of a master in chancery for levying upon and selling real estate. This section was a part of chapter 19 of the Revised Statutes of 1866; but it does not, nor does it purport to, fix the fees or compensation of the sheriff in the making of the sales of real estate. His fees for such

services are prescribed by section 5 of chapter 28, Compiled Statutes. The only fees which a sheriff may now legally charge and collect for levying upon and selling real estate under one execution are as follows: Levying and returning execution, $1; calling an inquest to appraise lands, 50 cents; fees of two appraisers, 50 cents each for each day engaged; making copy of appraisal 25 cents; advertising the sale, 50 cents; cost of publishing notice of sale, the legal rate prescribed by section 17, chapter 28, Compiled Statutes, not exceeding the actual charge made to him by the printer; each certificate of incumbrances, $1; commissions on money received at the sale as provided by section 5, chapter 28, Compiled Statutes, but in case no money is received at the sale he cannot charge anything for making it; making a deed, $1; five cents per mile for each mile actually and necessarily traveled in making the levy and appraisal. In case the property should be twice advertised and offered for sale the sheriff will then be entitled to 50 cents for each advertisement of the sale and the legal fees for the two publications of the notice of sale. It follows from what has been said that the verdict of the jury on which the judgment of the district court was based is wholly unsustained by the evidence.

2. After the plaintiff had rested its case the court, on motion of the defendant, compelled the insurance company to elect on which of the two causes of action stated in its petition it would stand and take the verdict of the jury,—that is, the court by its ruling compelled the insurance company to abandon the cause of action against the sheriff for the recovery of the illegal fees collected by him from it, or to abandon the cause of action for the statutory penalty. This action of the court was erroneous. The learned district court seems to have been of opinion that the two causes of action could not be united in the same petition; but the two causes of action in each of the petitions of the insurance company grew out of the same transaction and were connected with the same

subject of action. The two causes of action affected all the parties to the suit and did not require different places of trial (Code of Civil Procedure, secs. 87, 88); and the plaintiff had the right to join those two causes of action in one petition. It is true that the two causes of action were not separately stated and numbered as the Code requires, but that could not be taken advantage of by a motion to compel the plaintiff to elect on which cause it would stand.

3. The sheriff and his bondsmen, among other defenses to the action, pleaded that the fees sued for herein were charged and collected by the sheriff in pursuance of an agreement to that effect between the sheriff and the duly authorized counsel and attorney of the insurance company; and it is insisted here that the jury found the fees sued for were collected by the sheriff and paid by the insurance company in pursuance of such agreement; and therefore the insurance company is estopped from prosecuting this action. If the verdict of the jury is based on their finding that issue in favor of the sheriff and his bondsmen, the evidence does not sustain the finding. If the agreement was made, as pleaded, between the sheriff and the attorney for the insurance company that the sheriff should be paid fees for his services in excess of those provided by statute, the agreement was contrary to public policy and absolutely void. The statute prescribes and limits the fees and compensation which a sheriff may charge or receive for any services performed by him by virtue of his office; and he cannot make a valid agreement with a litigant for any compensation over and above that prescribed by statute for the performance of his duties as a sheriff. (*Burke v. Webb*, 32 Mich., 173; *Peck v. City Nat. Bank of Grand Rapids*, 16 N. W. Rep. [Mich.], 681.)

The judgment is reversed and the cause remanded, with instructions to the district court to set aside the order dismissing the petitions of the insurance company in the ten cases before mentioned, and to permit the insurance

company to proceed to trial in each of said cases upon the two causes of action mentioned in said petitions.

REVERSED AND REMANDED.